UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEPHEN P. SMITH | CIVIL ACTION |
| VERSUS | NO: 25-01337 |
| TICKETMASTER, LLC, et al. | SECTION: T (1) |

## ORDER AND REASONS

Before the Court are a Motion to Dismiss for Failure to State a Claim and a Motion to Dismiss, in part pursuant to Federal Rule of Civil Procedure 12(b)(3) seeking to compel arbitration, filed by Vivid Seats, LLC. R. Doc. 7. Also before the Court is a Motion to Compel Arbitration and Dismiss or Stay Proceedings filed by Ticketmaster, LLC. R. Doc. 15. Ticketmaster likewise filed a Motion to Dismiss for Failure to State a Claim. R. Doc. 16. Plaintiff Stephen P. Smith has filed oppositions to Defendants' Motions. R. Docs. 11, 20, and 21. Defendants have filed replies in support of their Motions. R. Docs. 12, 24, and 25. The Court has reviewed the pleadings, the Motions, and the applicable law and, for the reasons set forth below, will grant the Defendants' Motions to Compel Arbitration pursuant to Rule 12(b)(3).[1] R. Docs. 7 and 15.

BACKGROUND

According to Plaintiff, in May of 2025 he used the SeatGeek app to purchase tickets to a

---

[1] The third defendant, SeatGeek, Inc., was dismissed on motion by the Plaintiff. R. Doc. 14.

Jason Aldean concert in Dallas, Texas. R. Doc. 1, p. 2. After withdrawing the purchase price, including all fees and costs, from Plaintiff's bank account, he was redirected without notice to the TicketMaster website for completion of the transaction. *Id.* Because Plaintiff did not want to transact with Ticketmaster for personal reasons, he canceled the transaction and SeatGeek refunded the price he had paid for the tickets. *Id.* Plaintiff claims he sought other avenues to purchase alternative tickets but could not find a reputable seller. *Id.* Some weeks later, he used the Vivid app to purchase tickets for the same concert, for a total price of $806. *Id.* Once again, he was directed to the TicketMaster website for completion of his purchase. *Id.* However, TicketMaster's website notified him that it could not transfer the tickets to his email address because the address had been flagged for "some sort of improper activity." *Id.* Incensed, Plaintiff sought reimbursement for his ticket purchase, but Vivid refused to refund the purchase price, informing him that he could try to resell the tickets to other users. Doing so, however, could result in additional fees, nor was there a guarantee that the sale price would match his original purchase price. *Id.* Plaintiff contends that neither Vivid nor TicketMaster would refund his purchase price or produce the tickets. *Id.*, p. 3.

Plaintiff filed this class action suit against TicketMaster, Vivid, and SeatGeek "to represent a class of individual consumers who used SeatGeek or Vivid to purchase tickets to concerts, sporting events or other cultural events, only to be redirected to TicketMaster, without their knowledge or consent, and forced to conduct business with an entity they would otherwise choose not to." R. Doc. 1, p. 3. Plaintiff filed the class action pursuant to the Rules 23(a), (b)(2), and (b)(3)

2

of the Federal Rules of Civil Procedure on behalf of the following Classes: "All individual consumers who used SeatGeek or Vivid to purchase tickets to concerts, sporting events or cultural events without being notified that they would be forced to conduct business with TicketMaster." *Id.*, p. 6. And "[a]ll individual consumers, who upon discovery that SeatGeek or Vivid forced to conduct business with TicketMaster, were refused a refund or reimbursement for their ticket purchase." *Id.* On behalf of himself and the putative class, Plaintiff asserts claims for breach of contract, negligence, and unjust enrichment. R. Doc. 1, pp. 8-11.

The remaining Defendants, Vivid and TicketMaster, have filed *inter alia* motions to compel arbitration. R. Docs. 7 and 15. Each contends that Plaintiff entered into a contract with them and that both contracts include a mandatory arbitration and dispute resolution provision. R. Doc. 7-1, p. 6; R. Doc. 15, pp. 1-2. Plaintiff contends he did not knowingly or voluntarily agree to arbitrate any and all disputes or, alternatively, that the provisions are adhesionary.

LAW and ANALYSIS

This Court set forth the applicable law in *Coxen v. RPC Patterson Tubular Services*, Civ. A. No. 23-653, 2023 WL 4156831 (June 23, 2023). Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for improper venue. Fed. R. Civ. P. 12(b)(3). The Fifth Circuit has held that a motion to dismiss based on an arbitration or forum selection clause is proper under Fed. R. Civ. P. 12(b)(3). *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005). Under Rule 12(b)(3), the court is permitted to look at evidence in the record beyond simply the facts alleged in the complaint and its attachments. *Ambraco, Inc. v. Bossclip B.V.*, 570

3

F.3d 233, 238 (5th Cir. 2009). The court "must accept as true all allegations in the complaint and resolve all conflicts in favor of plaintiff." *Sinners and Saints, L.L.C. v. Noire Blanc Films, L.L.C.*, 937 F. Supp. 2d 835, 845 (E.D. La. 2013) (quoting *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. App'x 612, 615 (5th Cir. 2007)).

In determining whether the parties agreed to arbitrate this dispute, the Court must consider: '(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement?'" *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) (quoting *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008)). "When deciding whether the parties agreed to arbitrate the dispute in question, 'courts generally ... should apply ordinary state-law principles that govern the formation of contracts.' In applying state law, however, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.'" *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996) (omitting citations).

TicketMaster points to the "Mandatory Arbitration Agreement and Class Action Waiver" that was in place at the time Plaintiff purchased his tickets. R. Doc. 15-1, p. 3. The clause provides that "YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY DISPUTE, CLAIM, OR CONTROVERSY RELATING IN ANY WAY TO THE TERMS< YOUR USES OF THE SITE, OR PRODUCTS OR SERVICES SOLD, DISTRIBUTED, ISSUED, OR SERVICED BY OR THROUGH US---IRRESPECTIVE OF WHEN THAT DISPUTE, CLAIM, OR CONTROVERSY AROSE---WILL BE RESOLVED SOLELY BY

4

BINDING, INDIVIDUAL ARBITRATION AS SET FORTH IN THE TERMS, RATHER THAN IN COURT. YOU AND WE THEREBY EACH AGREE TO WAIVE ANY RIGHT TO A JURY TRIAL, AND AGREE THAT YOU AND WE MAY BRING CLAIMS AGAINST EACH OTHER ONLY IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING….:" *Id.* The Agreement further provides that "[t]he arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to, any claim that all or any part of this Agreement is void or voidable …." *Id.*

Ticketmaster argues that Plaintiff agreed to the terms of the Agreement because, to transact on its website or app, users must agree to the Terms at numerous, distinct times – including account creation, account sign-in, ticket purchase, and ticket transfer/acceptance. *Id.*, pp. 4 and 5-6. TicketMaster points out that users must sign in to the TicketMaster account and thereby agree to the terms when they accept transfer of a ticket issued by TicketMaster that the user purchased on a secondary ticket exchange such as Vivid. *Id.*, pp. 4 and 6-7. Here, TicketMaster says its records confirm that Plaintiff agreed to the Terms on many occasions, including when he purchased various tickets from 2018 to 2024 and when he accepted the transfer of the tickets at issue in this lawsuit. *Id.*, pp. 4-5 and 7-8.

TicketMaster argues that Plaintiff assented to the Terms of the Agreement on multiple

occasions, and it points out that courts within the Fifth Circuit have enforced so-called "clickwrap agreements" such as the one at issue, "where parties knew or should have known about the existence of a website's terms . . . even if they have not read them." R. Doc. 15-1, p. 11 (quoting *Deshotel v. PayPal, Inc.*, No. CV 6:19-0373, 2020 U.S. Dist. LEXIS 184767, 2020 WL 5813322, at *7-8, 21 (W.D. La. Aug. 24. 2020)) and collecting cases.[2] TicketMaster points out that Plaintiff had adequate notice of, and unambiguously assented to, the Terms of the Agreement, including when he agreed to accept the ticket transfer alleged in the Complaint. R. Doc. 15-1, p. 12. Further, Plaintiff checked a box agreeing to the Terms when completing the ticket purchases on TicketMaster's website, thereby forming a "clickwrap" agreement. Finally, TicketMaster argues that the Parties through the Terms of the Agreement clearly and unmistakably delegated arbitrability of all claims to the arbitrator rather than the courts. R. Doc. 15-1, pp. 14-16.

Plaintiff argues first that the Court should decide whether the Agreement is valid, rather than allow the arbitrator to resolve any attacks on the Agreement. He also argues that the Terms of Use are adhesionary and not enforceable under Louisiana law.[3] He cites *Aguillard v. Auction*

---

[2] "Clickwrap agreements 'are generally defined by the requirement that users assent to contract terms by 'clicking' some sort of 'I agree' or 'accept' button on a website to complete the transaction.'" *Alexander v. Experian Info. Sols., Inc.*, 2025 U.S. Dist. LEXIS 126703, at *14 (E.D. Tex. July 3, 2025).

[3] Under Louisiana law, "a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party," which may "raise a question as to whether or not the weaker party actually consented to the terms." *Aguillard v. Auction Mgmt. Corp.*, 908 So.2d 1, 8–9 (La. 2005) (quotation and citation omitted). The party challenging the contract has the burden of proving its lack of consent. *Id.* at 10.

*Mgmt. Corp.*, 908 So.2d 1, 8–9 (La. 2005), for the proposition that, under Louisiana law, "a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party," which may "raise a question as to whether or not the weaker party actually consented to the terms." He concedes that the party challenging the contract has the burden of proving its lack of consent. R. Doc. 21, p. 6 (citing *Aguillard*, supra, at p. 10). Id. at 10. He cites the following factors for determining whether the arbitration clause is enforceable, namely: "(1) the physical characteristics of the arbitration clause, including font size; (2) the distinguished features of the arbitration clause; (3) the mutuality of the arbitration clause, in terms of the relative burdens and advantages conferred by the clause upon each party; and (4) the relative bargaining strength of the parties." *Id.*, pp. 6-7 (quoting *Georgetown Home Owners Ass'n v. Certain Underwriters at Lloyd's, London*, 2021 WL 359735 at *12 (M.D.La. Feb. 2, 2021)). Plaintiff contends he had no choice whatsoever if he wanted to attend the concert. Id., p. 8. "He could either purchase the tickets or not." *Id.* He argues there was no opportunity to negotiate the terms of use, to the extent they apply, and thus he had no choice but to adhere to the terms of use.

TicketMaster counters that Plaintiff was not forced to accept its Terms. It points out that Plaintiff could exercise free will in making decisions whether to attend the Jason Aldean concert or any other concerts or entertainment events. TicketMaster contends that Plaintiff has identified no authority in which any court has invalidated an arbitration agreement as an adhesion contract simply because a plaintiff was forced to attend an entertainment or leisure event.

7

Vivid similarly argues that Plaintiff was advised of and knowingly and voluntarily accepted its Terms of Use. R. Doc. 7-1, pp. 6-7. Vivid notes that its Terms of Use were present on the first page, in bold and all capital letters, and advised that it contained "a class waiver as well as a mandatory arbitration and dispute resolution provision that may impact your legal rights in the event of a dispute." *Id.* (citing R. Doc. 7-2).[4] As he argued with regard to TicketMaster's Motion, Plaintiff claims Vivid's arbitration clause is one of adhesion and should not be enforced. R. Doc. 11, pp. 7-10.

The Court finds that both TicketMaster's and Vivid's Terms of Use were valid agreements into which Plaintiff voluntarily and knowingly entered. As to whether the arbitration clauses were contracts of adhesion under Louisiana law, those arguments can be presented to the arbitrator. There can be no doubt that Plaintiff had free will whether to purchase tickets through Defendants' apps and websites in order to attend the concert. He thus entered into valid contracts with Defendants, and both of those contracts contained valid and enforceable arbitration clauses.

---

[4] Vivid's Terms of Use further provided that the parties "agree that … any and all disputes, controversies, disagreements, or claims arising in any way out of or relating in any way to," *inter alia*, "any tickets or other items sold or purchased on or through the site … shall be fully, finally, and exclusively resolved through final and binding individual arbitration rather than in court." R. Doc. 7-2, p. 17. The Terms of Use also provided that the parties agree to "waive any right to a jury trial as well as any right to bring claims in or otherwise participate in a class, representative, or consolidated action or proceeding" as set forth more fully in the Terms of Use. *Id.* The Terms of Use further state that the "agreement to arbitrate covers and includes threshold questions of arbitrability," and that "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any and all disputes arising out of or relating to the formation, existence, scope, validity, interpretation, applicability, or enforceability of this agreement to arbitrate, or any part of it." *Id.* at 18.

8

Finally, the Court finds that the disputes in question clearly fall within the scope of the arbitration agreements. *See Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013). Because Plaintiff entered into binding arbitration agreements with Defendants that include all disputes at issue, including threshold questions of arbitrability, the Court will grant Defendants' Motions to Compel Arbitration.

Accordingly,

**IT IS ORDERED** that Vivid's Motion to Dismiss pursuant to Rule 12(b)(3) (R. Doc. 7) and TicketMaster's Motion to Compel Arbitration (R. Doc. 15) are GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's claims against TicketMaster and Vivid are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this 27th day of March 2026.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

9